The next case we'll hear is United States v. Williams and Ms. Davis. Good morning. May it please the Court, I'm Mary Davis. I represent Leconie Williams. And with the Court's permission, I'd like to reserve six minutes for rebuttal. The issue I'd like to address this morning is whether the District Court erred when it denied Mr. Williams' motion to suppress a firearm which was recovered from his motor vehicle following a purported traffic stop. The facts of this case are fairly simple. Major McCann, who was off-duty, traveled into a residential district at approximately 1 a.m. in the morning. According to Major McCann, this was a high-crime area. He came upon Mr. Williams' car in the roadway, and an individual was leaning into the driver's window. The individual walked away. The driver waved McCann to go around. The driver started to drive away, and McCann immediately activated his emergency equipment. The car traveled, depending on the testimony, there were two officers that testified, the car traveled between 150 and 300 feet when it stopped. Major McCann's reason for stopping the car was because the driver was impeding McCann's flow of traffic and because he wanted to investigate further. Following the stop, a firearm was recovered. Is your major argument that he was just not charged properly under this section? The government has conceded that he did not violate the statute with which he was charged. That's been conceded by the government. That's not the standard for a traffic stop. The standard for a traffic stop is either, it depends whether you put it under Terry or under the traffic stop notion, is whether the officer reasonably believed that a traffic violation was being committed. And he wasn't even the officer that selected the section for charging, it was his colleague. That's correct. But quite apart from it, we focus on the time of the stop, and if there was a traffic violation actually occurring, then he can stop the vehicle, can't he? Right, but there was no traffic violation. What about section, what is it, 4? The government raised two other possible violations. One was that he was parked more than 12 inches away from the curb. In regard to that, I would note that, number one, the government never raised this in any response. Yeah, but they don't need to. The question is, was the car in violation of the law? So there was no stop. They mischarged, that's no problem, is it? The problem is, if there's no violation, and the officer mistakenly thought there was a violation, that's a different proposition. And we have to evaluate that under a different standard. Exactly. In regard to parking more than 12 inches away from the curb, number one, that there was no evidence that he was parked more than 12 inches away from the curb. Oh, yes, there was. I believe that the testimony… In the middle of the road, and they said, car's parking on the side, and there was quite a bit. They discussed that during the hearing. There was actually no testimony, I respectfully disagree, there was no testimony that he was more than 12 inches from the curb. There was testimony, Major McCann, the only thing he testified to was that he was in the middle of the roadway. There was also a description of the roadway. Exactly, there was. But there was no testimony he was more than 12 inches away. The government could have brought out testimony to that, but they didn't. They did refer to, in their brief, they did refer to testimony by McCann where he was looking at a photograph, saying, well, see where this car is parked, you know, too far away, could have been parked closer. But that photograph wasn't William's car. That was a photograph taken by defense investigators for the purpose of the hearing. Again, there is nothing in the record, and the trial judge never found that he was parked more than 12 inches away. Well, the trial court made an error, too, because the trial court relied on Section 2B, I guess, which suffered from the same problems as 2A. Exactly, exactly, exactly. But, see, that's a side issue in this case. The question is, could the officer have made a traffic stop? And if the officer could have made a traffic stop, then the rest follows. If the officer couldn't have made a traffic stop, then that's your burden. But the point we would like to make, and I think I brought it out in the briefs, is that the government cannot, after the fact, go poring over the books, trying to find, well, maybe he violated this or maybe he violated that. This has to be raised at a point when the judge can consider it, when there can be testimony. Counsel, my recollection is it was a bare-bones motion to suppress very little information. The government didn't file a response. It was a request for a hearing. The hearing started. The judge said he wanted more briefing, and the lawyer for the government went home that night, did the brief, researched it. The next day, the hearing starts back up. Is that correct? I don't know if it's exactly that, but I think it was the next day. This part is not in the appendix that explains this very particularly. Exactly, right. But the judge said during defense argument concerning that supplemental pleading that they filed, the judge said he was not going to consider it because it was after the fact. Well, I've got the exact portion right here, and I think that's one construction, but I think there's a reasonable construction that's completely contrary to what you just said. The court said, I don't know that McCann thought that section, and he was referring to 21-1001B, was a violation. That's what Finn wrote. The Pallance attorney, the government has plucked out another motor vehicle violation that they believe these facts satisfy, but that's not enough, Your Honor. We do need to look at what's going on inside the head of the officer. And the court said, no, I agree. He says he saw the car in the middle of the road, and it was something to do with the car being stopped in the middle of the road. That's what the violation was. It was not something after the fact. I agree. And so it would seem that the court is stating it agrees that a post hoc rationalization would be inappropriate, and that's not what he found in this case. I think he found that you cannot make, you cannot go through and find additional violations. I think that was my reading of it. And I think the case law supports that. I think it's very clear. I mean, I don't think the government cited a single case where it's been upheld on appeal for the government to come after the fact to try to find some violation. At the time of the stop, the officers have to believe that the facts that they have, the facts that have been stated on the record, support a violation. What makes this a little different than that is the actual violation is proven. The other one that he could have suspected of is really in the same family. They're basically stopped in the road. And it's the place of it. It's not a residential district, or it is one in the sense that the other one doesn't apply. Right. It's just a little nuance of a difference. I mean, I can follow you if you're talking, yes, you go in, you find, well, there's no violation of the stopping, but the front light was out. He didn't see it, but just examined the car and it was out. I think I could follow you very well on it, but this is in the same family. I mean, he sees something going on, and I don't know if we need to hold that officer if ultimately what the conduct he describes is, in fact, a violation. That is, he's in that middle of that road, and he just didn't pick out the right statute that fits there. Two answers in response. Number one, again, there's no testimony that he was more than 12 inches away. I understand that aspect of it, and I'm not sure if the proof is required that you have to testify to 12 inches or not, and if it is, then you've got a point. You've got to actually have someone say 12 inches, or the court can accept that if you're parked in the middle of the road because you would think the intent of the statute was to keep you from parking in the middle of the road, that that, in fact, would satisfy the statute. But I think I pointed this out in my reply brief that the car could not have been parked in the middle of the road. Because you couldn't go on one side and the other side. Exactly. There was parking on both sides, and if there's nobody parking there, the middle of the road had a lot of space on both sides. But there was parallel parking on the right side and vertical parking on the left. Exactly. I think there was testimony that a lot of the spaces were taken. Well, sure. Regardless of being parked in the middle of the road, it's not parked against the curb where there were cars parked or on the other side where there's vertical parking. Right, but just because he wasn't against the curb doesn't mean he was more than 12 inches away from the middle of the road. You're saying there's parking on both sides? There is parking on both sides. And he's not in one of those parking spots? 12 inches, are you calculating it from the place where the cars parked or from the curb? 12 inches from the curb. I think the law is 12 inches from the curb. It is, and there are cars parked on the right side, and he's parked in the middle of the road. But he could not have been parked in the middle of the road to begin with. He could not have. No, because based on the width of the road and the parking space. There's travel lanes and then there's parking lanes on both sides. And he's parked in the travel lane. Yes, to some extent. But we don't know. The officer said in the middle of the road. And to the right of the middle of the road, there's a parking lane. Yes, that's correct. And there are cars parked there. So by definition, unless each one of those cars is narrower than 12 inches, by definition, he's farther than 12 inches from the curb. I don't believe the record supports that. The other point I would like to make is that particular statute, there's an exception if one is discharging a passenger. Major McCann testified that the individual he saw may have just been dropped off from the car. He said he saw it for 30 seconds, stopped there. Somebody leaning in. As he got toward the car, the person leaning in walked away. Exactly. This is not discharging a passenger. He conceded, though, that the person may have been discharged. Now, I think we have to use our common sense here. If someone is dropping somebody off and they get off, they get out of the car, they come over, lean in the window, say thanks a lot, goodbye, I don't think that's a violation of the law. I think that is something that the exception in the statute is meant to cover. There's no time limit on how long somebody can discharge a passenger, whether the passenger can come over. I think we have to use common sense. Except the law does say that any stopping, with the exception of discharging a passenger, is parking. Exactly. And the officer saw that vehicle in the center of the road for 30 seconds. Right. And he conceded that the car may have been discharging a passenger. He did not know. Was the intent to remain not signaled by the fact that the driver motioned to the police officer to go around? I think, but again, and I think that's something that not in the same context, but that the judge recognized, is that people stop and talk all the time in the middle of the road or whatever. That doesn't mean it's not a traffic violation. Right. You go up Interstate 95 in Maryland, and I'd say 95% of the vehicles are going over the speed limit. That doesn't mean there's no speed limit. No, but again, getting back to the point about the discharge of the passenger, the government did not establish that that exception did not apply. They did not establish there was a violation. But you don't need to establish a violation. We're just talking about probable cause or reasonable suspicion. Exactly. Well, he clearly had probable cause to believe that a violation was occurring. I mean, he made a judgment. He basically said it was impeding the highway, and it was unusual. It was in a high-crime area. It was at 1 o'clock in the morning, and the guy's leaning in the door, and he probably thought a drug transaction was going down. But regardless, under Wren, as you know, if it's a traffic stop, legitimate traffic stop, you can have some other motive as long as there is an actual traffic violation. The officer's reason for stopping the vehicle is because it was impeding his flow of traffic. Those were the facts that he stated. Impeding his flow of traffic isn't a violation of any law. At all. It isn't a violation. Parking in the middle of the road is a violation, isn't it? I don't think there's a statute, per se, that says it's against the law to park in the middle of the road. There's a statute that says you cannot park more than 12 inches from the curb. And again, what we have here is the government is trying to go after the fact, find a violation that somehow fits, and that there were no findings made on by the court, and there's no testimony to support it. And for that reason, we think that there was no traffic violation and that the only other reason for having the stop was Terry, which we've addressed. And if the court has questions on it, I don't think that satisfies it. I like your argument on Terry. Oh, thank you. And I'll save the rest of my time for the final.  All right. Mr. O'Park. Thank you, Your Honor. It may please the court. My name is John O'Park, representing the United States. The district court judge properly denied the defendant's motion to suppress in this case. The defendant can have reasonable suspicion that the defendant had committed... What's the standard? Is it probable cause that a traffic violation occurred, or is it reasonable suspicion? Your Honor, this court has not squarely addressed the issue post-Wren. I'm not sure it matters much because the officer sees the violation. So if he believes, reasonably believes a violation is occurring, it may even be more than probable cause. For his purposes, it may be beyond a reasonable doubt. I agree, Your Honor. To answer your question, this court hasn't addressed it post-Wren. The courts that have, there's, I believe, a bit of a split, but the vast majority of the circuits that have addressed it have said that Wren didn't really change the standard, that the language is kind of taken out of context, and the standards that they had before, which was that reasonable suspicion applies to a traffic stop, is the standard that should be applied. This court need not decide that. I believe Your Honor is correct that probable cause certainly existed. And that issue blends with the exception, the discharge exception, that the defendant was just arguing. Even if the exception is in the statute, the officer certainly has the ability to stop, to investigate whether or not a violation has occurred, whether or not that really was an individual that had been discharged. If it hadn't been, then a citation could have been written. The officer didn't simply need to ignore the potential for, ignore the probable cause of a violation. In other words, if he doesn't actually see the passenger getting out of the car, he can stop, because he doesn't know that's what he's doing, and then he goes up to investigate, and then he finds out that he was doing a passenger, and that's the end of it. Correct. Absolutely, Your Honor. And so, based on that, I believe the exception is really a red herring in this case, and it's not an issue that needs to... What about the 12 inches? Your Honor, I understand... Is that an affirmative burden for the government to establish that the fact the car was not within 12 inches? I don't believe the words need to be explicitly stated on the record, and I think the district court's finding is very illustrative of where the car was parked. And the first thing, to answer your question, Your Honor, this is Joint Appendix 182. The court found that, quote, there was plenty of room, according to the testimony, even of the defendant's investigator, that there would have been room to stop on the side of the road for the defendant at that night. Standing in the middle of the road wasn't necessary. It's quite clear from that that the defendant was not legally parked. Major McCann testified where the legal parking space was, and the court found that the defendant wasn't there. And, Your Honor, I'd also like to reference that the facts... The factual decisions of the district court were not challenged by the defendant in his opening brief. The simple argument was that there was a misapplication of the law by the district court. This court's to review the facts for whether or not there's any egregious error by the district court in making those factual findings, but that was not raised as an issue in the opening brief. Not until the defendant reads the government's response brief that there's an additional statute that needs to be addressed does there begin to be quibbling about the factual findings of the district court. The government respectfully suggests that any factual issue has been waived. The defendant also referenced that the traffic officer cannot look for a traffic violation post hoc. That's absolutely correct. It's a Third Circuit case, U.S. v. Lewis, that stands for that proposition. In that case, the officer pulled over an individual while interacting with the individual, saw that the car had tint that was illegal, and then issued a tint citation, and they attempted to use that as the basis for reasonable suspicion. We can't backdate the observations prior to the stop, and that's absolutely correct. It's not what occurred here. What occurred here was that the officer had his observations prior to conducting the stop and didn't observe any additional conduct for which he's trying to justify. This is all in the same family anyway, what we're talking about, the conduct that ultimately the court sort of determines he's violated. Correct, Your Honor. However, I don't believe that the same family even would necessarily be required. There is case law decided by the government in the arrest context, and those cases are Devenpeck v. Alford is a Supreme Court case from 2004 which dealt with the same family argument in an arrest context, and there the officer arrested somebody for violating the Privacy Act during a traffic stop because he was recording the stop on a digital recorder. And before the stop, he'd been impersonating a police officer. The Supreme Court said that it was a valid arrest even though the officer cited this Privacy Act statute, which was inapplicable, because the facts observed by the officer at the time of the interaction justified probable cause for an arrest, even though it wasn't even in the same family. So it sort of fits within the facts observed. Correct, correct. Yes, that's essentially that. You may not call it same family in terms of the actual offense that you ultimately convict him of, but the facts are in the same family. Yes, that's correct, Your Honor. And this Court has applied that case, Devenpeck v. Alford and U.S. v. McNeil, where the officer arrested somebody, booked him on a charge that didn't even exist under Maryland law, but because the facts observed applied to an actual existing offense, I believe it was harassment by threat, there's no Fourth Amendment problem. In the eventual confession, other activity could be admitted without violating the Fourth Amendment. Although those are arrest context cases, I do not see a distinction between arrest and traffic stop. The government does make an alternative argument that there's reasonable suspicion of criminal activity. Judge Nehmeyer has indicated he does not. I just found her argument very good on that. Understood, Your Honor. What do you think? You don't need to answer. I believe that you can distinguish Sprinkle, that it is possible to do that. This may be a close case, but I believe that the district court's decision can be affirmed on the alternative grounds. In Sprinkle, it was a high-crime neighborhood, but it was the light of day. The car was legally parked. And the most important thing from Sprinkle was that the officers who initially saw two people huddled around hands in the middle of the car saw what was in those hands and therefore undercut their own suspicions before effectuating a stop. And we don't have that here. So here you have a car stopped in the middle of the street at 1 o'clock in the morning in a high-crime area, and as the officer approaches, a person at the window of the car walks away. Yes, Your Honor. And that's reasonable suspicion to effect a temporary arrest under Terry? There's additional facts that the court can consider. What's the other one? It can consider the way that the car drove after the lights were turned on. It can consider the nervous actions of the defendant, glancing in the rearview mirror repeatedly. Major McCann testified those actions. He thought that the defendant was considering flight. Seizure does not occur until there has been... What crime do you think was... What was the reasonable suspicion of what crime? The district court found that it was consistent with a drug transaction that had occurred, and that reasonable suspicion existed to investigate that believed criminal activity. Okay. Unless this court has questions on the evidentiary issue, I'll yield my time. Okay. Thank you. Thank you. Ms. Davis. I just looked at the record, and they said that another officer went back and measured the street and found the street to be 29 feet across. He was parked in the middle of the 29-foot area, and that did not include the parking spaces. Exactly. So they asked me if you measure from curb to curb, it would be much wider. But he measured from the parking spaces to the parking spaces, and it was 29 feet. Right. Now, isn't that of necessity, explicit testimony, that it's more than 12 inches from the curb? Because if he were in the middle of the road... 29 feet. Right. If he were in the middle, then Major McCann would have been able to get around on the right. Maybe or maybe not, but we're talking about whether the car was stopped more than 12 inches from the curb. And I don't think that establishes it. He's in the middle of the 29-foot area? But it could not have been in the middle of a 29-foot area because... Now you're arguing the facts, but that's what the officer testified and nobody disputed. The Cadillac was in the middle of the road, impeding the traffic. Impeding the officer. And the officer measures the middle of the road to be 29 feet. And then the question was, was that from curb to curb? And the officer said, no, that was setting aside the parking spaces on the right and the left. And it was the 29 feet. That alone doesn't matter whether it's 29 feet. The fact is he measured the area where the car stopped and excluded the parking spaces. I think what Your Honor is referring to is the testimony, I think it was by a defense investigator, that went out and made the measurements. And he did not measure. He measured the width of the road. He did not measure where the car was. But was that from curb to curb? And he said, no. Exactly. He said, no, he excluded the parking spaces. It was just from cars to car. Exactly. But he did not say, I mean, he did not assume or he did not testify that the car was parked in the middle of the road. No, I'm assuming that from Officer McCann. Exactly, exactly. And our argument is that Officer McCann's testimony is not accurate. Oh, well, you can argue that. Oh, right, exactly. There's no evidence to the contrary. Right. And in regard to Judge Flanagan's further briefing, on page 90 of the joint appendix, that's when the judge said, if you want to go back and do further briefing, it was not further briefing on the issue of what the violation was. The judge never granted any exception to the waiver, ever granted any relief to the waiver of not raising that argument below. And I think the case law is pretty clear from almost every circuit that you cannot go after the fact and look for a violation. And so we would submit under Rule 12e that this was waived and it's too late for it to be raised now. And the only other thing I would say is I wish you liked my first argument as much as I did. Well, I didn't comment on how strong your first argument was. We're talking it out. Exactly. I understand. I understand you're court appointed. Yes, you are. And I do want to thank you for your service. Thank you. It was my pleasure. We'll come down and re-counsel and then proceed on to the last case.
judges: Paul V. Niemeyer, James A. Wynn Jr., Louise W. Flanagan